IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BLAINE A. WHITE, et ux.,           :

    Plaintiffs,                :

v.                                 :
                                              Civil Action No. GLR-12-3591
JPMORGAN CHASE BANK, N.A.,         :

    Defendant.                 :

                                 :

**MEMORANDUM OPINION**

Plaintiffs Blaine A. White and Virylnn D. Atkinson-White (collectively, "Plaintiffs") commenced this action against Defendant JPMorgan Chase Bank, N.A. ("Chase") alleging various causes of action that stem from Chase's alleged failure to modify Plaintiffs' mortgage loan under the Home Affordable Modification Program ("HAMP"). Currently pending before the Court are Chase's Motion to Dismiss the Complaint (ECF No. 6), Chase's Motion to Dismiss the Amended Complaint (ECF No. 12), Chase's Motion for Rule 11 Sanctions (ECF No. 18), and Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 20). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2011). For reasons outlined in detail below, the Court will deny as moot Chase's Motion to Dismiss the Complaint, grant Chase's Motion to Dismiss the Amended

Complaint, grant in part and deny in part Chase's Motion for Rule 11 Sanctions, and grant Plaintiffs' Motion for Leave to File Second Amended Complaint.

## I. BACKGROUND[1]

In December 2006, Plaintiffs executed a mortgage loan of $253,300 (the "Loan") to purchase a home in Baltimore, Maryland. Chase currently services the Loan. On or about March 21, 2009, Mrs. White contacted Chase via telephone and spoke with a loss mitigation representative named Bobbi. During that call, Mrs. White provided Bobbi with the couple's gross and net monthly household income. According to Plaintiffs, Bobbi informed Mrs. White that the couple qualified for a loan modification.

On May 6, 2009, Chase mailed Plaintiffs an offer to participate in the HAMP Trial Period Plan ("TPP").[2] Under the TPP, Plaintiffs were required to make three monthly payments of

---

[1] Unless otherwise noted, the following facts are taken from the Amended Complaint and are viewed in a light most favorable to Plaintiffs. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

[2] Congress created the HAMP, which is part of the Emergency Economic Stabilization Act of 2008, codified at 12 U.S.C. §§ 5201 et seq. (2012), to incentivize lenders to modify the mortgage of homeowners at risk of losing their homes. See Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 772 (4th Cir. 2013). One of the threshold requirements to qualify for the HAMP program is that the applicant's mortgage payments be more than 31% of their income. See id. at 773 (citation omitted). The actual loan modification process consists of two stages: (1) the payment of a reduced monthly loan payment under the TPP; and (2) the offer of a permanent loan modification once all program requirements are met. See id. (citation omitted).

2

$1,395 beginning in June 2009.  The TPP letter provides, in relevant part, "[the TPP] is the first step.  Once we are able to confirm your income and eligibility for the program, we will finalize your modified loan terms and send you a loan modification agreement . . . ."  (Am. Compl. Ex. C, at 5,[3] ECF No. 11-4).  Moreover, the actual TPP Agreement reads:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan.

(Am. Compl. Ex. D, at 4, ECF No. 11-5).  Soon thereafter, on May 29, 2009, Chase sent Plaintiffs four temporary TPP payment coupons.  Although only three payments were required under the TPP Agreement, Chase sent Plaintiffs a fourth coupon for the purpose of making an additional payment during the month between the third TPP payment and final loan modification.

After accepting the TPP Agreement and making three timely TPP payments for June, July, and August 2009, Plaintiffs had not heard from Chase regarding finalization of their loan modification.  As a result, Plaintiffs continued to make monthly reduced TPP payments of $1,395 for over two years.  During that

---

[3] All page numbers refer to the pagination on ECF.

3

time, Plaintiffs inquired about the status of their loan modification on three occasions and Chase informed them a "decision would be made any day." (Am. Compl. ¶ 36).

On March 3, 2011, Chase denied Plaintiffs' request for a permanent loan modification because their "monthly housing expense . . . [was] less than or equal to 31% of [their] gross monthly income." (Def.'s Mot. to Dismiss Ex. D, at 2, ECF No. 12-5). Approximately four months later, Chase provided Plaintiffs with a new TPP offer, dated July 15, 2011, with a payment amount of $2,274.49. Plaintiffs rejected the new offer and continued to submit reduced payments in the original amount of $1,395 until Chase returned their November 2011 payment and demanded that Plaintiffs repay the full amount in arrears.

On December 6, 2012, Plaintiffs filed a five-count Complaint in this Court alleging: (1) breach of contract; (2) promissory estoppel; and violations of (3) the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law §§ 14-201 et seq. (West 2013); (4) the Maryland Consumer Protection Act ("MCPA"), Id. §§ 13-101 et seq. (West 2013); and (5) the Maryland Mortgage Fraud Protection Act ("MMFPA"), Md. Code Ann., Real Prop. §§ 7-401 et seq. (West 2013). (See ECF No. 1). On January 29, 2013, Chase filed its first Motion to Dismiss. (ECF No. 6). In response, Plaintiffs filed an Amended Complaint,

alleging the same causes of action, on March 15, 2013.[4] (ECF No. 11). Chase filed its second Motion to Dismiss on March 29, 2013. (ECF No. 12). On April 22, 2013, Chase filed a Motion for Rule 11 Sanctions to which Plaintiffs responded by filing a Motion for Leave to File Second Amended Complaint on May 10, 2013. (See ECF Nos. 18 & 20).

## II. DISCUSSION

### A. Standard of Review

Chase moves to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Presley v. City of Charlottesville, 464 F.3d 480, 483 (4th Cir. 2006) (alterations and internal quotation marks omitted) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe

---

[4] Although the filing of an amended complaint does not automatically render the pending motion to dismiss moot, see Smith v. Maryland, No. RDB-11-2007, 2012 WL 3596098, at *4 (D.Md. Aug. 20, 2012), Chase filed a second motion to dismiss in response to Plaintiffs' Amended Complaint. As a result, Chase's Motion to Dismiss the original Complaint (ECF No. 6) is DENIED as moot.

5

the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. U.S., 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alterations and internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).

the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." Ibarra v. U.S., 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alterations and internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." Id. (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]'—'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).

**B. Analysis**

   **1. Motion to Dismiss Amended Complaint**

The crux of Plaintiffs' allegations is that the TPP Agreement constituted an enforceable contract, which Chase breached by failing to finalize their loan modification after they made timely TPP payments under the Agreement. Courts have dismissed such breach of contract actions, however, when "compliance with the TPP [does] not guarantee a permanent loan modification." Allen v. CitiMortgage, Inc., No. CCB-10-2740, 2011 WL 3425665, at *5 (D.Md. Aug. 4, 2011). As a result, for reasons outlined in specific detail below, Plaintiffs' Amended Complaint will be dismissed in its entirety.

   a. Breach of Contract (Count I)

The Court will grant Chase's Motion to Dismiss Plaintiffs' breach of contract claim because the TPP Agreement does not constitute an enforceable contract.

In Maryland, "the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." Spaulding v. Wells Fargo Bank, N.A., 714 F.3d 769, 777 (4th Cir. 2013). Plaintiffs in breach of contract actions "must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." Taylor v. NationsBank, N.A., 776

7

A.2d 645, 651 (Md. 2001) (citation omitted); see also Md. Code Ann., Com. Law § 22-701(a) (West 2013) (breach of contract "occurs if a party without legal excuse fails to perform an obligation in a timely manner," among other things).

Plaintiffs fail to allege the existence of a contractual agreement. The Amended Complaint provides that the TPP Agreement constituted an offer, which Plaintiffs accepted by signing the Agreement and making the necessary TPP payments. According to Plaintiffs, Chase breached this contractual relationship by failing to finalize the loan modification. The TPP Agreement clearly states all necessary conditions which must be satisfied to bind Chase to a permanent loan modification. Again, the Agreement reads:

> I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents **will not be modified unless and until** (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that **the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Plan**.

(Am. Compl. Ex. D, at 4) (emphasis added).

This language contradicts Plaintiffs' averments that timely payment of the reduced TPP amounts was the sole action necessary to contractually bind Chase to finalize their loan modification. Finalization of Plaintiffs' loan modification was clearly

8

conditional. In fact, Plaintiffs acknowledge as much by alleging Chase's loss mitigation department informed them on three occasions "that a decision would be made any day regarding the finalization of the modification." (Am. Compl. ¶ 36). Even the cover letter attached to the TPP Agreement states that the TPP "is the first step" and that finalization of the loan modification is contingent upon Chase "[confirming Plaintiffs'] income and eligibility for the program." (Am. Compl. Ex. C, at 5). Furthermore, Chase's denial letter clearly states Plaintiffs failed to meet a condition required for modification, namely a housing expense that was less than or equal to 31% of Plaintiffs' gross monthly income. (See Def.'s Mot. to Dismiss Ex. D, at 2). Neither the Amended Complaint nor its exhibits sufficiently allege that Chase was contractually obligated to automatically finalize Plaintiffs' loan modification at the conclusion of the three-month TPP payment period.

As a result, Plaintiffs' breach of contract claim must be dismissed for failure to state a claim upon which relief can be granted.

    b.   <u>Promissory Estoppel (Count II)</u>

The Court will grant Chase's Motion to Dismiss Plaintiffs' promissory estoppel claim because it suffers from the same defects as their breach of contract claim.

Under Maryland law, a plaintiff must allege four elements under a promissory estoppel theory:

> (1) a clear and definite promise; (2) where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; (3) which does induce actual and reasonable action or forbearance by the promisee; and (4) causes a detriment which can only be avoided by the enforcement of the promise.[5]

Pavel Enters. v. A.S. Johnson Co., 674 A.2d 521, 532 (Md. 1996). A statement that leaves a number of important terms up in the air is not a "clear and definite promise." McKenzie v. Comcast Cable Commc'ns, 393 F.Supp.2d 362, 373 (D.Md. 2005).

Plaintiffs allege Chase stated "that Mr. and Mrs. White would be able to lower their monthly mortgage payments permanently if they made the three payments for the Modification and otherwise complied with Chase's request under HAMP." (Am. Compl. ¶ 62). According to Plaintiffs, these statements "included a clear and definite promise of a permanent loan modification if the Modification payments were made." (Id. ¶

---

[5] Chase, citing Ver Brycke v. Ver Brycke, 843 A.2d 758, 772 n.9 (Md. 2004), initially avers that Plaintiffs' promissory estoppel claim does not lie because an express written contract between the parties relates to the same matter. (See Def.'s Mot. to Dismiss at 12-13). The Court will not address this argument, however, because Plaintiffs fail to sufficiently allege the existence of an express written contract between the parties. As a result, the Court will dispose of Plaintiffs' promissory estoppel claim on Chase's alternative argument that Plaintiffs failed to satisfy the elements of a prima facie promissory estoppel claim.

63). Chase avers that Plaintiffs' allegations are no more than a conclusory recitation of the promissory estoppel elements. The Court agrees.

Plaintiffs' promissory estoppel claim also fails, however, because they failed to satisfy the first element. As previously stated, the plain language of the TPP Agreement provides that finalization of Plaintiffs' loan modification was conditional. Therefore, the plain language of the Agreement belies Plaintiffs' allegations that Chase made a clear and definite promise to permanently modify the loan if they made the TPP payments.

As a result, Plaintiffs' promissory estoppel claim must be dismissed.

    c.   <u>Violation of the MCDCA (Count III)</u>

The Court will grant Chase's Motion to Dismiss Plaintiffs' MCDCA claim because Chase had a right to pursue foreclosure proceedings when Plaintiffs defaulted on their mortgage loan.

The MCDCA prohibits debt collectors from claiming, attempting, or threatening to "enforce a right with knowledge that the right does not exist," among other things. Md. Code Ann., Com. Law § 14-202(8). Plaintiffs allege that Chase violated this section of the MCDCA by "threatening and proceeding an intent to foreclose based upon practices described above" with "knowledge they are not entitled to do so under

11

Maryland foreclosure law and procedures." (Am. Compl. ¶¶ 71 & 74).

As a preliminary matter, Plaintiffs' allegations are conclusory and void of the factual underpinnings necessary to state a plausible claim. Moreover, Plaintiffs concede in the Amended Complaint that they were three mortgage payments behind in May 2009. (Am. Compl. ¶ 27). This concession, coupled with the plain language of the TPP Agreement clearly stating that foreclosure proceedings will resume if the Agreement is terminated (see Am. Compl. Ex. D, at 3), illustrate Chase's right to foreclose.

Plaintiffs' MCDCA claim will, therefore, be dismissed for failure to state a claim upon which relief can be granted.

   d.  Violation of the MCPA and MMFPA (Counts IV and V)

The Court will grant Chase's Motion to Dismiss Plaintiffs' MCPA and MMFPA claims because they are not alleged with the requisite particularity.

MCPA and MMFPA violations both rest on whether the lender made fraudulent misrepresentations. See Md. Code Ann., Com. Law § 13-301 & Id., Real Prop. § 7-401-02. Because both claims sound in fraud, they are "subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.'" Spaulding, 714 F.3d at 781

12

(quoting Fed.R.Civ.P. 9(b)). Such pleadings include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Id. (citation and internal quotation marks omitted).

Plaintiffs fail to meet the heightened pleading requirement in their Amended Complaint. To the extent Plaintiffs rely upon their construction of the TPP Agreement in identifying the fraudulent misrepresentations, those allegations are not considered by the Court for reasons articulated above. Moreover, Mrs. White's telephone conversation with a representative in Chase's loss mitigation department is insufficient because of the plain language of the TPP Agreement. Finally, the allegations in the MCPA and MMFPA sections of the Amended Complaint do no more than recite the elements of a cause of action under these statutes in contravention of Rule 9(b)'s pleading requirements.

Accordingly, Plaintiffs' MCPA and MMFPA claims must be dismissed.

**2. Motion for Rule 11 Sanctions**

On April 22, 2013, Chase filed a Motion for Rule 11 Sanctions seeking redress for various averments Plaintiffs allegedly retained and added to their Amended Complaint, and for its reasonable attorneys' fees incurred in preparing the Motion.

13

Local Rule 105.8(b) does not require a response to a Rule 11 motion unless it is ordered by the Court. Although not ordered, Plaintiffs responded to Chase's Motion by filing the pending Motion for Leave to File Second Amended Complaint on May 10, 2013.

The decision to impose Rule 11 sanctions is within the sound discretion of the district court. <u>Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc.</u>, 160 F.3d 170, 177 (4th Cir. 1998). Under Federal Rule of Civil Procedure 11(b)(3), an attorney must certify to the court "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support." Fed.R.Civ.P. 11(b)(3). Generally, "Rule 11(b)(3) authorizes sanctions for filings that contain 'allegations based on information which minimal factual inquiry would disprove,' or when an attorney knows that a position is unsupported by fact." <u>W. Md. Wireless Connection v. Zini</u>, 601 F.Supp.2d 634, 647 (D.Md. 2009) (citations omitted).

Chase avers that its initial Motion to Dismiss and attached denial letter (<u>see</u> ECF No. 6) placed Plaintiffs on notice that they did not meet the threshold requirement for participation in HAMP because of their income. According to Chase, Plaintiffs' Amended Complaint, filed notwithstanding this notice, includes untrue and misleading averments in paragraphs three, twenty-

14

eight, and forty-one regarding their ability to meet all HAMP criteria. Chase also argues that Plaintiffs improperly qualified factual averments in paragraphs twenty-six, thirty-five, thirty-six, and thirty-nine of the Amended Complaint with the phrase "on information and belief" when each of the averments are within the personal knowledge of the Plaintiffs.

The Second Amended Complaint Plaintiffs seek leave to file corrects the violations cited in Chase's Motion. Plaintiffs failed to file their Motion to Amend, however, prior to the expiration of the twenty-one day safe harbor period which would have allowed Plaintiffs to amend the improper averments without being subject to Rule 11 sanctions. See Fed.R.Civ.P. 11(c)(2). Despite the late filing, Plaintiffs' proposed amendments illustrate a willingness to address the violations. Moreover, the Court is convinced that Plaintiffs' allegations regarding their HAMP eligibility constitute a grave misunderstanding of their rights under the TPP Agreement, not an attempt to mislead the Court. As a result, the Court, in its discretion, will grant in part and deny in part Chase's Motion for Rule 11 Sanctions. The Court will grant Chase's request to strike all averments identified in the Motion. Plaintiffs' Motion to File a Second Amended Complaint will be granted for the sole purpose

of remedying those violations.[6]  Chase's request for attorneys' fees will be denied.  Plaintiffs are forewarned, however, to refrain from engaging in such violative conduct in the future.

### III. CONCLUSION

For the aforementioned reasons, Chase's Motion to Dismiss the Complaint (ECF No. 6) is DENIED AS MOOT; Chase's Motion to Dismiss the Amended Complaint (ECF No. 12) is GRANTED; Chase's Motion for Sanctions (ECF No. 18) is GRANTED IN PART and DENIED IN PART; and Plaintiffs' Motion for Leave to File Second Amended Complaint (ECF No. 20) is GRANTED.  A separate Order follows.

Entered this 17th day of June, 2013

_____/s/_____<br>
George L. Russell, III<br>
United States District Judge

---

[6] The Second Amended Complaint is also DISMISSED for the reasons articulated in this opinion.